[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a motion for modification of a child support order for two minor children. The motion is brought by the defendant wife who also has legal and physical custody of the children.
The original order was issued in October of 1985 and provided, as part of the dissolution decree, that the plaintiff pay $142.50 per child per week as child support. No alimony was ordered.
At that time the plaintiff was working as an employee of a pool installation business earning $800.00 per week gross, $612.91 after taxes. See plaintiff's financial affidavit dated October 9, 1985.
The defendant was unemployed and caring for the two young children, ages four and five. CT Page 2741
At that time, too, the plaintiff and the defendant were both using drugs, the plaintiff apparently addicted. After the dissolution, the plaintiff entered into a treatment program and apparently completed it successfully. He has now remarried and, in 1989, bought the pool business and a leasing company.
The plaintiff's income increased in 1988 to $104,000.00 (see exhibit 2). His present wife's income for 1988 was $24,500.00.
In 1989, their joint incomes were $159,103.00 (exhibit 2) with his wife's income increasing to $59,152.00 while the plaintiff's remained at $100,000.00. His present affidavit of August 9th gives his gross income as $1,000.00 a week or $52,000.00 a year from his pool business. He also has deducted $223.95 for FICA. The deduction for FICA is an overstatement since the maximum, permissible deduction is $3,856.00 or $74.15 a week. Consequently, his net earnings are not $776.05 as indicated on his affidavit but $925.85.
The first question is whether there has been a substantial change in circumstances to warrant a modification in the order for child support. Under the present law, there is no need to show that such a change was not contemplated at the time of the original divorce. See Connecticut General Statutes46b-86 (revised 1989).
The defendant, also, has had her circumstances changed in that she is presently employed and earning some $80.00 a week. Both children are now of school age and are now attending school and living with their mother on the third floor of a three family house owned by the defendant's parents. It should be noted that the support order at the time of the judgment included a provision that prevented the plaintiff from modifying that order so long as the defendant was earning less than $10,400.00 per annum.
It would appear from the situation of both parties, therefore, that there has been a substantial change in circumstances which permits the court to determine whether a modification is appropriate.
The plaintiff's claim is, in effect, that he has no money. However, his testimony as to his financial situation and his affidavit raise more questions than answers. For example, in his deductions he cites real estate taxes of $98.97 per week and $112.09 per week on two pieces of real estate. Together this would total $10,923.12 a year. However, his 1989 income tax return lists only $4,315.00 as taxes. Again, he lists his mortgage payments on his home at $642.04 a week which would CT Page 2742 total $33,386.88 a year. However, his 1989 income tax return lists his home mortgage interest at $26,302.00 or $505.80 a week. Moreover, under assets, he lists stock in G F Leasing Company as of no value. But the evidence established that the leasing company had purchased from him a 1990 Lexus and a 1986 Porsche which the leasing company in turn leased to the pool company at rentals of $640.00 a month and $630.00 a month. There was also testimony that the leasing company owned a 1989 Oldsmobile. Consequently, it would appear that there is some value to the assets of this company.
The plaintiff's 1989 income tax return also lists interest and dividend income of $3,790.00 on investments of $20,000.00. There is no such income listed on the plaintiff's affidavit nor is there any investment listed in that amount, $20,000.00.
The plaintiff further claimed that he had no money to live on, that he was using cash that he kept in his house and had done so for five years for living expenses; although at the same time, there was some $52,000.00 in the bank in his bank account. This cash was supposed to have been the result of buying and selling gold, none of which was evidenced on his income tax return. While he and his wife said they took no income from the pool company from January until May they did receive $8,000.00 from the sale of a Florida home, some $12,000.00 in a gift from plaintiff's parents and another $6,000.00 from some other gift in addition to income from the sale of the gold. They also received an income tax refund of some $29,850.00, $10,000.00 of which the plaintiff testified he gave to his pool company.
Moreover, he lists as an asset a boat on which he gives no value and states there is no equity. The form requires him to state the value, not whether there is any equity. The fact is he bought the boat for some $52,000.00. He values it at $45,000.00 now and could have sold it for $35,000.00. He did not sell it because he said his loan on boat, of which there was no documentary evidence, was $45,000.00. However, by selling the boat for $35,000.00, he could have reduced the loan to $10,000.00 and, therefore, reduced his liabilities.
It is strange that despite all his claims for having no money, he was able to keep up the loan payment on the boat which is $119.60 per week. Plaintiff also attempted to show his business was going downhill. However, the figures showed that while there had been a loss last year and a loss this year, the loss this year was substantially less than the loss last year and sales had increased by some $22,000.00. In fact the figures provided by the plaintiff as an indication of the financial CT Page 2743 situation of his business were somewhat questionable in that they were neither audited nor in any way vouched for by the accountant since he depended entirely on the information the plaintiff had given him.
The plaintiff has also acquired rather substantial assets beginning in 1989 when he purchased the pool business and the leasing company, he also purchased property on Blakesley Avenue in North Haven from his parents for $464,000.00.
The plaintiff also owns a condominium in East Haven which he bought in 1987 for $350,000.00 on which he took a $250,000.00 mortgage. He has been attempting to sell it for $400,000.00 and now rents it. The property he bought in North Haven from his parents included a mortgage of $350,000.00 which indicates that he paid some $50,000.00 from his savings.
The plaintiff also bought property in Wallingford consisting of three acres, two dwellings, a small house and a larger house which included an indoor swimming pool. While he first said that he did not have money to renovate it, the evidence showed that he had taken out a building permit for November 14, 1989, before title actually passed in January, 1990. The permit was for $18,000.00, and he began renovating it at that time, starting with the exterior including a new complete roof.
The plaintiff also testified that he worked 60 to 70 hours a week and attended AA three or four times a week. It seems strange that if the business was doing so badly that he should put in so many hours of work and, in addition, spend time at AA. It would appear that he was not spending a great deal of time with his children and, in fact, the evidence appeared to establish that it was his present wife who spent the time with his children rather than him.
In sum, it appears to the court that the plaintiff has money for whatever he wishes to buy. On the basis of the guidelines, which at the moment are limited to monthly disposable incomes of $750.00, two children of the ages of the age of these children, seven and nine, are entitled to 44 per cent of the maximum disposable income of the parents.
Applying that percentage in this case would suggest that the children would be entitled to $440.00 from both parents per week. The plaintiff's share in that would appear to be 93 per cent of that total or $409.20.
While the court is not required to apply the guidelines because of the difference in income, nevertheless, CT Page 2744 the court believes that the percentages used are appropriate for the determination of the shares the children have in their parents' income.
Consequently, the court finds the following:
1. There has been a substantial change in circumstances warranting the modification of the support order.
2. The court further finds that the support order should be modified to require the payment of $200.00 per week per child or a total of $400.00 a week to the defendant for the support of the two children.
3. The parties signed a waiver to an immediate wage withholding order, which is in the file.
Judgment of the support order shall be modified in accordance with the foregoing.
MARGARET C. DRISCOLL STATE TRIAL REFEREE